UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO.12-22-KSF

ROBERTA LYNN LITTLETON                                           PLAINTIFF

v.                              **OPINION & ORDER**

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY                                                       DEFENDANT

\* \* \* \* \* \* \* \* \* \* \*

The plaintiff, Roberta Lynn Littleton, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for period of disability, disability insurance benefits, and Supplemental Security Income based on disability. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

I.     **OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

     (1)      If the claimant is currently engaged in substantial gainful activity, she is not disabled.

     (2)      If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5) Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc), she is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. § 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Littleton filed her claim for benefits on November 5, 2009, alleging an onset date of October 23, 2009 [TR 137, 139]. After a hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on October 25, 2010 [TR 12-28]. At the time the ALJ rendered his decision, Littleton was 46 years old. [TR 40, 137]. She graduated from high school and attended two semesters of college [TR 40]. Littleton has past relevant work experience as a restaurant manager [TR 44, 59]. She claims that she is disabled due to fibromyalgia, Lupus, headaches, obesity (status

post gastric bypass), numbness of the hands down to her feet, thyroid problems, arthritis, depression, and anxiety [TR 40].

The ALJ began his analysis by determining that Littleton has met the insured status requirements of the Social Security Act through December 31, 2013 [TR 14]. At step one, the ALJ determined that Littleton has not engaged in any substantial gainful activity since her alleged onset date of October 23, 2009 [TR 14]. At step two, the ALJ found that Littleton suffers from the following severe impairments: status post gastric bypass; obesity; numbness and paresthesias of the left hand on the dorsum between thumb and index finger; subclinical hypothyroidism (early stage); degenerative changes in the talonavicular joint of the right foot; posterior and plantar calcaneal spurs; removal of ganglion cyst on the right foot; degenerative arthritis of the bilateral feet; and depression and anxiety [TR 14]. Continuing on to the third step, the ALJ determined that Littleton does not have an impairment or combination of impairments that meets or medically equals in severity any of the listed impairments [TR 18].

The ALJ then determined that, based on the medically determinable evidence, Littleton has the residual functional capacity ("RFC") to perform the exertional and nonexertional requirements of medium work, with the following limitations: no exposure to hazards, such as moving machinery and heights; frequent climbing ladders, scaffolds, or ropes; avoid concentrated exposure to extreme cold, heat, wetness, humidity, and temperature changes; can perform simple tasks (consistent with SVP 2 entry level work as defined by the Dictionary of Occupational Titles); can make simple work-related decisions with few work place changes; can perform occasional overhead reaching with bilateral extremities; and can maintain occasional interaction with general public, coworkers, and supervisors [TR 18]. At the hearing the vocational expert testified that Littleton would not be able

3

to return to her past relevant work as a restaurant manager given the limitations in her RFC [TR 26]. Thus, at step four, the ALJ determined that Littleton is unable to perform her past relevant work [TR 26]. However, based on her RFC, age, education and experience, the vocational expert did identify other jobs existing in significant numbers in the national economy that Littleton could perform. Based on this evidence, the ALJ determined that Littleton was not disabled at step five of the sequential evaluation process [TR. 20-21].

The ALJ's decision that Littleton is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied her request for review on February 11, 2012 [TR 1]. Littleton has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

### III.   GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court

might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

IV.     ANALYSIS

On appeal, Littleton first argues that the ALJ erred by failing to allow her attorney to cross examine the VE. Specifically, Littleton claims that her attorney was not allowed to ask questions about certain moderate limitations. A review of the transcript reveals that the ALJ simply asked Littleton's attorney to define the term "moderate" in vocational terms, and her counsel was unable to so define the term. Littleton's attorney then withdrew the question. Thus, her argument that the ALJ prevented her attorney from cross-examining the VE lacks merit.

Next, Littleton argues that the ALJ erred by not finding that her systemic lupus erythematous ("SLE") is a severe impairment. Under the regulations, a severe impairment is an impairment or combination of impairments that significantly limits the claimant's ability to do basic work activity. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Generally, an impairment is not severe "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *see also* 20 C.F.R. §§ 404.1521, 416.921.

Here, the ALJ discussed Littleton's SLE, but found it non-severe because she received the diagnosis only three months before the ALJ's decision, and at that time, the medication was controlling her symptoms. Moreover, only one treatment note in the record discussed Littleton's SLE diagnosis. Additionally, Dr. Kip Beard, the consulting examiner, did not diagnose Littleton with SLE. Accordingly, substantial evidence supports the ALJ's finding that Littleton's SLE is non-severe.

However, even if the ALJ erred in evaluating Littleton's SLE, that error was harmless because the ALJ continued the sequential evaluation process. Specifically, the ALJ determined that Littleton had other severe impairments and then continued on to consider the limitations and restrictions imposed by all of Littleton's impairments, both severe and non-severe. As a result, any error in failing to consider her SLE to be severe was harmless. *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987).

Next, Littleton argues that the ALJ erred when she did not find that her impairments met Listings 12.04 and 12.06. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04 and 12.06. Listing 12.04 relates to mental impairments involving affective disorders and Listing 12.06 relates to mental impairments involving anxiety-related disorders. To qualify as a listed impairment under Listing 12.04, the claimant's impairment must satisfy the criteria in both Paragraphs A and B, or the criteria in Paragraph C, of that listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. To qualify as a listed impairment under Listing 12.06, the claimant's impairment must satisfy the criteria in both Paragraphs A and B, or the criteria in both Paragraphs A and C, of that listing. *See id*. at § 12.06.

In making her finding, the ALJ first considered whether the Paragraph B criteria for Listings 12.04 and 12.06 were satisfied. To satisfy Paragraph B criteria of both listings, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04 and 12.06. Upon review of the record, substantial evidence supports the ALJ's determination that Littleton's impairments did not satisfy the Paragraph B criteria. While she does have some moderate restriction in her activities of

6

daily living, social functioning, and concentration, persistence and pace, these restrictions are moderate as opposed to "marked." Moreover, the record does not establish any repeated episodes of decompensation.

The ALJ then considered whether the Paragraph C criteria for Listings 12.04 and 12.06 were satisfied. The Paragraph C criteria are extreme functional limitations specific to the particular listing at issue. Specifically, Paragraph C of Listing 12.04 requires a finding of "[m]edically documented history of chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," combined with repeated episodes of decompensation of extended duration, a residual disease process, or a current history of 1 or more years of inability to function outside of a highly supportive living arrangement. Paragraph C of 12.06 requires a finding of "complete inability to function independently outside the area of one's home." The ALJ determined that the evidence failed to establish the presence of Paragraph C criteria in this case because no documentation in the record supports a finding of repeated episodes of decompensation or residual disease process. This finding is based on substantial evidence because the record clearly reveals that she can both live outside a highly supportive living arrangement and function outside her own home. For these reasons, substantial evidence supports the ALJ's finding that Littleton's alleged mental impairments do not meet or equal Listings 12.04 or 12.06.

To the extent that Littleton argues that the ALJ erred by failing to evaluate her impairments under Listings 14.02 and 14.04 relating to Lupus, this argument fails. While Littleton raises this issue, she has failed to make any effort to develop this argument. Accordingly, this argument is deemed waived. *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996).

For her next argument, Littleton contends that the ALJ erred by failing to afford more weight to the opinion of one of her treating physicians, Dr. Paul Kleykamp. Dr. Kleykamp opined that Littleton could lift and or carry less than ten pounds occasionally and frequently and can stand and or walk less than two hours in an eight-hour workday and sit less than two hours in an eight-hour work day. Additionally, Dr. Kleykamp opined that Littleton could never climb, balance, kneel or crawl and only occasionally stoop and crouch. He further determined that her handling, feeling, pushing and pulling would be limited, and that she should avoid exposure to heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity and vibration. Finally, he determined that she could not relate with co-workers and stand up to stress of engaging in productive work activity, nor could she maintain regular attendance, follow instruction, maintain attention and concentration, remember locations and procedures [TR 514-18]. The ALJ gave little weight to this opinion because it was presented in a check-off form that she determined was not supported by the overall medical evidence [TR 24-25].

Generally, the ALJ should give controlling weight to a disability opinion by a treating physician if it is well-supported by clinical and laboratory findings and is consistent with other evidence. The ALJ may consider the length and nature of the treating relationship, the supportability of the opinion, consistency, specialization, and any other factors that may be appropriate. *See* 20 C.F.R. § 416.927(d)(2)(2007). The supportability of the opinion depends on the degree to which the source presents relevant evidence to support the opinion, particularly medical signs and laboratory findings. *See* 20 C.F.R. § 416.927(d)(3)(2007); *see also Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711-712 (6th Cir. 1988). The Sixth Circuit has held that a treating physician's opinion may be "undercut, to a degree, by the absence of underlying objective findings

or corroborative clinical evidence." *Sias v. Secretary of Health and Human Services*, 861 F.2d 475, 479 (6th Cir. 1988).

Here, the medical record simply does not support the restrictions assessed by Dr. Kleykamp. While she has mild degenerative changes in her right foot, there is simply no radiographic evidence to limit Littleton's walking to less than two hours per day. Furthermore, the record shows her ganglion cyst has resolved, she has a normal gait, and is responding to conservative treatment with medication and orthotics [TR 278, 292, 293, 295, 306]. Her hypothyroidism was determined to be subclinical and her carpal tunnel syndrome EMG was normal [TR 283]. Thus, there is simply no support for limiting Littleton to lifting less than ten pounds and walking, standing, and sitting less than two hours per day. Because of the lack of supporting medical evidence, the ALJ did not err in affording little weight to the opinion of Dr. Kleykamp.

In her final argument, Littleton relies on a residual functional capacity report completed by Dr. England, which she submitted to the Appeals Council after the ALJ rendered her decision [TR 531]. The Appeals Council considered the evidence, but ultimately declined Littleton's request for review [TR 1, 5]. When presented with evidence submitted only to the Appeals Council, "the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996). Instead, the district court can only "remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material and that there was good cause for not presenting the evidence in the previous proceeding." *Id*. In order to be material, a claimant "must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence."

9

*Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir. 1989). Here, the additional evidence does not satisfy this requirement.

Dr. England's report provides information consistent with the opinion of Dr. Kleykamp, which the ALJ discounted because it was not supported by objective medical evidence. Thus, it is unlikely the new evidence would have changed the ALJ's decision. Additionally, Dr. England's report was rendered after the date of the ALJ's decision, thus it does not necessarily reflect Littleton's condition during the relevant time period. *See Wyatt v. Secretary of Health and Human Services*, 974 F.2ds 680, 685 (6th Cir. 1992)("Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial."). Finally, Littleton has not presented any good cause evidence for failing to present evidence from Dr. England to the ALJ. For these reasons, the Court will not consider the new evidence submitted to the Appeals Council or to this Court. Based on a review of the record before the Court, there is substantial evidence in support of the ALJ's decision that Littleton is not disabled.

V. **CONCLUSION**

Accordingly, the Court, being fully and sufficiently advised, hereby **ORDERS** that the decision of the Commissioner is **AFFIRMED** as it was supported by substantial evidence and was decided by proper legal standards.

This October 25, 2013.



Signed By:
*Karl S. Forester*
**United States Senior Judge**